## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES ARKETT and VIRGINIA
NICKELS, on behalf of themselves and all
others similarly situated,

Civil Action No.:

     Plaintiffs,

     vs.

ADVANCE AUTO PARTS, INC,

     Defendant.

## CLASS ACTION COMPLAINT

AND NOW, come the Plaintiffs, James Arkett and Virginia Nickels, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, Sara J. Watkins, Esquire; D. Aaron Rihn, Esquire; and the law firm of Robert Peirce & Associates, P.C., and claim damages of the Defendant, Advance Auto Parts, upon causes of action, the following which are statements:

1.    Plaintiff James Arkett is an adult individual who resides in Ellwood City, Pennsylvania 16117.

2.    Plaintiff Virginia Nickels is an adult individual who resides in Sarver, Pennsylvania 16055.

3.    Defendant is an American automotive parts provider, headquartered Raleigh, North Carolina 27609. It operates 4,777 stores and 320 Worldpac branches. [1]

4.    In a recent filing with the SEC, the Defendant confirmed that its data was stolen from a third-party cloud database environment (hereinafter referred to as the "Data Breach"):

---

[1] https://www.bleepingcomputer.com/news/security/advance-auto-parts-confirms-data-breach-exposed-employee-information/

a.    On May 24, 2024, the Defendant identified an unauthorized activity within a third-party cloud database environment containing the Defendant's data and launched a formal investigation with industry-leading experts.

b.    On June 4, 2024, a criminal threat offered what it alleged to be the Defendant's data for sale. The Defendant then proceeded to notify law enforcement.

5.    After investigating the stolen files, Defendant states "[it] believes contain personal information for current and former employees and job applicants, including social security numbers and other government identification numbers" (hereinafter referred to as "Personally Identifiable Information" or "PII").

6.    Defendant stored and utilized Plaintiffs' and Class Members' PII. By obtaining, collecting, using, and deriving a benefit from the PII of the Plaintiffs and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. By voluntarily undertaking the collection of this sensitive PII, Defendant assumed a duty to use due care to protect that information.

7.    Despite its responsibilities to Plaintiffs and Class Members, Defendant stored its PII on a database that was negligently and/or recklessly produced. This misconfiguration allowed files on the database to be accessed without a password or any form of multifactor authentication.

8.    The Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiffs' and Class Members' PII that it collected and maintained, and for failing to provide adequate notice to the Plaintiffs and other Class Members that their information had been stolen by criminals and listed for sale on the dark web.

9.    Defendant maintained the PII in a reckless and negligent manner. In particular, the PII was maintained on a database that was not password protected and therefore accessible to any

member of the public. Foreseeably, cybercriminals took advantage of this obvious vulnerability, collected Plaintiffs' and Class Members' PII from the database, and then listed this information for sale on the dark web.

10.     As a result of the Data Breach, the Plaintiffs and Class Members suffered ascertainable losses including, but not limited to, a loss of privacy, the loss of the benefit of their bargain, out-of-pocket monetary losses and expenses, the value of their time which was reasonably spent to remedy or mitigate the effects of the attack, the diminished value of their PII, and the substantial and imminent risk of identity theft. Given the theft of information that is largely static—like Social Security numbers—this risk will remain with Plaintiffs and Class Members for the rest of their lives.

11.     Upon information and belief, Plaintiffs' and Class Members' PII remains in Defendant's possession. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe and should be provided injunctive and other equitable relief.

## PARTIES

12.     Plaintiff James Arkett is a citizen of Ellwood City, Pennsylvania.

13.     Plaintiff Virginia Nickels is a citizen of Sarver, Pennsylvania.

14.     Defendant Advance Auto Parts, Inc. is registered as a domestic North Carolina corporation with its principal place of business at 4200 Six Forks Road, Raleigh, North Carolina 27609.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100, many of whom have different

citizenship from Defendant, including the Plaintiffs. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

16.     This Court has personal jurisdiction over the Defendant because the Defendant operates its business, maintains its headquarters, and/or conducts substantial business within this District.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is based in this District, maintains Plaintiffs' and Class Members' PII in this District, and has caused harm to both Plaintiffs and all Class Members in this District.

## FACTS

18.     During the standard course of its business practices, the Defendant stores, uses, and maintains the Plaintiffs' and Class Members' PII.

19.     The Defendant agreed to undertake legal responsibility to maintain the PII of the Plaintiffs and Class Members safely, confidentially, and in compliance with any or all applicable laws.

20.     The Defendant assumed legal and equitable duties and knew, or should have known, that they were responsible for protecting the Plaintiffs and Class Members when Defendant opted to obtain, collect, use, and derive a benefit from the Plaintiffs' and Class PII.

21.     The Defendant was responsible to protect the Plaintiffs' and Class members' PII from unauthorized disclosures, and such attempts to obtain said information was reasonably foreseeable.

22.     The Plaintiffs and Class members have a history of taking reasonable steps to secure the confidentiality of their PII.

23.    The Plaintiffs and Class Members put their faith in the Defendant to keep their PII confidential and securely maintained, while only using this information for business purposes and to only make previously authorized disclosures of their PII.

24.    The information that was entrusted by the Plaintiffs and Class members to the Defendant was sensitive, confidential, and static, which ultimately means the information will not change and can likely lead to an abundance of other financial crimes.

25.    The Plaintiffs and Class members demand that the Defendant safeguard their PII. The Defendant was entrusted to keep their PII safe and only use it for authorized disclosures. However, Defendant failed in this task.

26.    For all the aforementioned reasons, the Defendant had a direct duty to ensure reasonable measures were adopted to protect the PII of both the Plaintiffs and Class Members.

### Fact Specific to Plaintiff James Arkett

27.    Plaintiff Arkett is a former employee of the Defendant and provided his PII to Defendant in order to gain employment.

28.    Plaintiff Arkett is careful with his personal information. Plaintiff Arkett ensures that he redacts all documents containing personal information before disposing them. Plaintiff Arkett has never knowingly shared any Personally Identifiable Information over the internet to unsecured locations. Plaintiff Arkett consistently makes efforts to keep his information secure and has diligently choose his banking accounts as to protect his interests in the best possible fashion.

29.    Plaintiff Arkett provided his PII to the Defendant solely for the purpose of gaining employment, and reasonably assumed that the Defendant would use even basic security measures to keep his PII safe. For these reasons, the Defendant was in possession of the Plaintiff's information during the time of the Data Breach.

30.     Plaintiff Arkett suffered injury from the loss of privacy the exact second that his PII was gathered by a third party without authorization.

31.     Plaintiff Arkett has also suffered injury in the form of damages to and diminution in the value of his PII, a form of intangible property that Plaintiff entrusted to Defendant.

32.     Plaintiff Arkett is in his mid-70s, and thus the Data Breach has caused Plaintiff Arkett to suffer imminent and impending injury arising from a substantially increased risk of fraud, identity theft, and misuse of his PII.

33.     The increased risk of imminent harm and loss of privacy has caused Plaintiff Arkett to suffer increased levels of stress, fear, and anxiety.

34.     Plaintiff Arkett has a strong interest in ensuring that his PII, which, upon information and belief, continues to be possessed by the Defendant, is safeguarded from future breaches.

**Fact Specific to Plaintiff Virginia Nickels**

35.     Plaintiff Nickels applied for a job with the Defendant, was offered said job, but ultimately rejected the job offer.

36.     During the application process, Plaintiff Nickels shared her Personally Identifiable Information with the Defendant.

37.     Plaintiff Nickels is very careful when it comes to her Personally Identifiable Information. Plaintiff Nickels has never knowingly shared any PII over the internet to unsecured locations. Plaintiff Nickels stores her PII in a secure location and is careful about not giving access to this information to any unauthorized third parties.

38.     Plaintiff Nickels provided her Personally Identifiable Information to the Defendant solely for the purpose of gaining employment, and reasonably assumed that the Defendant would

use even basic security measures to keep her Personally Identifiable Information safe. For these reasons, the Defendant was in possession of the Plaintiff Nickels' information during the time of the Data Breach.

39.    Plaintiff Nickels suffered injury from the loss of privacy when her Personally Identifiable Information was gathered by a third party without authorization.

40.    Plaintiff Nickels also has suffered injury in the form of damages to and diminution in the value of her Personally Identifiable Information, a form of intangible property that Plaintiff Nickels entrusted to Defendant.

41.    The Data Breach has caused Plaintiff Nickels to suffer imminent and impending injury arising from a substantially increased risk of fraud, identity theft, and misuse of her Personally Identifiable Information as Plaintiff Nickels will continue to struggle protecting herself from the actions of criminals with her information.

42.    Plaintiff Nickels has spent large amounts of time dealing with the repercussions of the Data Breach. This includes tasks like researching the Data Breach, monitoring her own accounts, and spending time on different credit reporting agencies to ensure no fraudulent activity was occurring with her information

43.    The increased risk of imminent harm and loss of privacy has caused Plaintiff Nickels to suffer increased levels of stress, fear, and anxiety.

44.    Plaintiff Nickels has a strong interest in ensuring that Plaintiff Nickels' Personally Identifiable Information, which, upon information and belief, continues to be possessed by the Defendant, is safeguarded from future breaches.

## FACTS APPLICABLE TO THE CLASS

### The Data Breach was Foreseeable

45.     The Cybersecurity and Infrastructure Security Agency explained that home users, organizations, and technical staff should "protect your organization by identifying assets that are searchable via online tools and taking steps to reduce that exposure."[2]

46.     Due to the increasing risk of cyberattacks of this magnitude, the Cybersecurity and Infrastructure Security Agency (hereinafter referred to as "CISA") has created an official alert and statement page, often partnering with the Federal Bureau of Investigation, that aims to guard stakeholders against the continued growth of ransomware threats.[3]

47.     Due to this, it can reasonably be assumed that the increase in cybersecurity attacks and the open concern for future attacks by government organizations, was widely understood by the public and to all companies in the Defendant's industry, which includes the Defendant.

### Value of Personally Identifiable Information

48.     The PII of individuals is of an incredibly high value to criminals, as they reportedly are willing to pay high amounts of money to obtain this information. Studies indicate that criminals are willing and able to pay around $1,000 to gain enough personally identifiable information to successfully steal a person's identity.[4]

---

[2]     *See* How Can I Protect Against Ransomware, available at https://www.cisa.gov/stopransomware/how-can-i-protect-against-ransomware.

[3]     *See* Official Alerts & Statements – CISA, (CISA, 2024), *available at:* https://www.cisa.gov/stopransomware/official-alerts-statements-cisa

[4] *See* Revealed – How Much is Personal Information Worth on the Dark Web? (Smith, 2023) https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx

49.    Based on the aforementioned, the data that was compromised in the Data Breach is on par with this level of value for criminals, as it was not simply credit card information that was compromised, but instead was Personally Indefinable Information.

50.    The danger of PII, like Social Security Numbers, in the hands of criminals is extreme, as criminals can open bank accounts, apply for loans, obtain different forms of identification, and even create insurance policies in a person's name.[5]

51.    Data Breaches contain an extra layer of risk when it is realized that there is oftentimes a delay between when theft occurs and when it is discovered, in addition to the delay that can occur between theft and usage of stolen information. The U.S. Government Accountability Office explained that stolen information will sometimes be held for a year or longer before being used for fraudulent activity. However, once this usage begins, it can go on for years as it is very hard to stop this activity once it starts.[6]

52.    The Defendant knew, or reasonably should have known, that there is an incredibly high level of importance when it comes to safeguarding the PII of the Plaintiffs and Class Members. There are foreseeable consequences that would occur if the Defendants security systems were breached, which includes significant costs that would be placed upon the Plaintiffs and Class Members.

---

[5] See Is Your Social Security Number for Sale on the Dark Web? What To Do if Your Personal Information Is Compromised (Knowles and Trejos, 2024) https://allaboutcookies.org/compromised-ssn-dark-web#:~:text=Once%20a%20criminal%20has%20your,web%20once%20it%20exists%20there.

[6] Report to Congressional Requesters, GAO, (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf

53.    Plaintiffs and Class Members now will have to endure constant surveilling of their PII, monitoring of their personal finances, and loss of rights for years to come. The Class is incurring, and will continue to incur, such damages in addition to any fraudulent use of their PII.

54.    It is within reason that the Defendant was, or should have been, fully aware of the significant volume and nature of the data on its network, and thus the significant number of innocent people who would be harmed if a breach were to occur.

55.    The injuries sustained by the Plaintiffs and Class Members were a direct result of the Defendant's failure to adopt and enforce adequate security measures for the protection of the PII of Plaintiffs and Class Members.

56.    When the Defendant decided to obtain, collect, use, and benefit from the possession of Plaintiffs' and Class Members' PII they assumed legal responsibility and knew, or should have known, that they were responsible for the protection of the Plaintiffs' and Class Members' Personally Identifiable Information from unauthorized disclosure.

57.    The Plaintiffs and Class Members have taken the reasonable steps to maintain the confidentiality of their personally identifiable information.

58.    The Plaintiffs and Class Members reasonably expected the Defendant to adopt secure data protection policies that are designed to keep their Personally Identifiable Information confidential and protected, to only use their Personally Identifiable Information for business related purposes, and to prevent any unauthorized disclosures of the Personally Identifiable Information.

**Defendant Failed to Protect Plaintiffs' and Class Members' Personally Identifiable**

**Information**

59.     The Defendant failed to prevent this Data Breach by failing to properly secure systems which would contain the Personally Identifiable Information of Plaintiffs and Class Members. The Defendant also had other reasonable options for security, including destroying any data for individuals who they had not had a business relationship with for an extended period of time.

60.     Companies that are similar both in scale and industry to the Defendant have received constant warnings and alerts regarding the need to protect their data, which only exacerbates the negligent actions of the Defendant.

61.     The Defendant failed to take any form of necessary and expected steps to protect the PII of the Plaintiffs and Class Members despite the continuous public announcements of the potential for data breaches and compromises.

62.     The Cybersecurity & Infrastructure Security Agency suggests that to protect your system from potential cyber-attacks the Defendant should or could have established:[7]

     a.     Control access;

     b.     Harden Credentials;

     c.     Establish centralized log management;

     d.     Use antivirus solutions;

     e.     Employ detection tools;

     f.     Operate services exposed on internet-accessible hosts with
             secure configurations; and,

---

[7] *See* Weak Security Controls and Practices Routinely Exploited for Initial Access (2022) https://www.cisa.gov/news-events/cybersecurity-advisories/aa22-137a

      g.      Keep software updated.

63.     In order to protect yourself from cyber-attacks, including attacks like the one that resulted in this Data Breach, the Defendant could and should have implemented the following measures which were suggested by the Washington State Department of Financial Institutions: [8]

      a.      Be on the lookout for suspicious links, attachments, and downloads;

      b.      Create and use strong passwords;

      c.      Use multi-factor authentication whenever possible;

      d.      Use secure internet communications;

      e.      Update your anti-virus software regularly; and,

      f.      Report anything suspicious to your IT department.

64.     Due to the fact that the Defendant was possessing the PII of the Plaintiffs and Class Members, the Defendant should have implemented these measures and strictly adhered to them to help prevent any potential cyberattacks. However, the Defendant continually failed to implement any of the aforementioned security measures, like password protection, encryption, or multifactor authentication.

**Defendant Failed to Comply with Federal Trade Commission Guidelines**

65.     The Federal Trade Commission ("FTC") has circulated countless guides for corporations which all alert the public to the increased importance of maintaining strong data security practices.

---

[8] *See* Protecting yourself from cyber attacks https://dfi.wa.gov/consumers/cyber-attacks-tips

66.     Per its website, the FTC has established a "sound data security plan" which they believe should be built upon five principles:[9]

    a.    Take Stock:

        i.    Take inventory of all of your materials that could store sensitive data;

        ii.    Know what PII your corporation possesses and the ways in which it is received; and,

        iii.    Understand where your PII is stored and place an emphasis on understanding the varying levels of risk attached to different forms of information.

    b.    Scale Down:

        i.    Only record Personally Identifiable Information that is required for business operations;

        ii.    Do not use PII for business operations that could be completed through the use of some different operations system; and,

        iii.    Follow the "Principle of Least privilege" which implies that employees should have access to only the information they need to do their job.

    c.    Lock It:

        i.    Store paper documents or files properly, whether that be under lock and key or in a controlled environment;

        ii.    Require files that contain any PII be kept in a locked location and ensure that employees understand the importance of the data they are working with;

        iii.    Ensure that every method of data collection or data releasing is secure, and criminals cannot potentially tamper with the data during these processes;

---

[9] *See* Protecting Personal Information: A Guide for Business https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business

      iv.      Understand all aspects of electronic security including things like vulnerable spots and the best ways to secure the potential risks of storing information electronically;

      v.      Have the needed staff and employees trained to interact with this data and ensure its safe keeping; and,

      vi.      Use the most up-to-date and secure electronic security systems that your corporation is able to possess. Having the best security is the best form of prevention.

    d.    Pitch It:

      i.      Implement information disposal practices that are reasonable and secure the protection of peoples' PII.

    e.    Plan Ahead:

      i.      Have a plan in place to respond to security incidents before they potentially occur; and,

      ii.      Have systems in place for acting after a data breach, which includes a plan of action for business operations and talking to the public.

67.     The FTC has openly placed an emphasis on corporations keeping only the Personally Identifiable Information that they need for operations, and protecting the information that they do decide to keep. Properly disposing of information that a corporation no longer needs is the best way to limit risk when it comes to potential data breaches, in addition to going to great lengths to protect the information that a corporation does decide to keep.

68.     The FTC, via Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, has allowed for legal action to be taken against businesses for failing to reasonably protect Personally Identifiable Information. The FTC allows this course of action because it considers the failure to employ reasonable security measures to protect against unauthorized access to confidential

information to be a violation of the "unfair methods of competition in or affecting commerce" language set forth in 15 U.S.C. § 45.

69.    Defendant's failure to establish even the most basic data security actions led to a lack of protection against unauthorized access to the Plaintiffs' and Class Members' PII, which constitutes a violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

70.    The Defendant was fully aware of the dangers of failing to protect the PII of the Plaintiffs and Class Members and still failed to meet this obligation.

**Defendant Failed to Comply with Industry Standards**

71.    The automobile industry is at an extreme risk when it comes to data security because of the nature of the Personally Identifiable Information that they tend to collect during their day-to-day operations.

72.    The aforementioned information has clearly established the expectation of corporations, like the Defendant, to implement different forms of best practice in order to establish a strong data security system.

73.    The Defendant routinely failed to meet the minimum standards for cybersecurity, and in turn failed to protect any of the Personally Identifiable Information that they possessed.

74.    This failure by the Defendant to meet any of the industry standards when it comes to Cybersecurity clearly opened the door for the Data Breach that occurred.

**The Defendant's Failure to Protect the Personally Identifiable Information of the Plaintiffs and the Proposed Class Has Led to Significant Risk and Substantial Harm**

75.    The injuries sustained by the Plaintiffs and Class Members are a direct result of the unauthorized access to their PII, which was caused by the failures of the Defendant.

76.     The potential for identify theft has now become a real danger for the Plaintiffs and Class Members, as this occurs when an unauthorized user gains access to a person's personal and financial information.

77.     The USA government web portal establishes identity theft as something using personal information without an individual's permission. This information includes names and addresses, credit card information, Social Security numbers, bank account numbers, and medical insurance account numbers.[10]

78.     When identity theft occurs, cybercriminals can use a person's PPI to open new banking accounts, access a person's social media accounts, access a person's current bank accounts, gain medical services, and other actions that all ultimately lead to the suffering of an individual's way of life.

79.     The Data Breach, a direct result of the Defendant's failure to protect the Plaintiffs and Class Members, has led to distinct damages and the potential for future suffering which includes:

    a.     Loss of value, control, and continued publication of their PII;

    b.     Continued costs connected to attempting to fix the failures of the Defendant;

    c.     Lost wages and Opportunity Costs resulting from the lasting impacts of the Data Breach, including time spent researching and attempting to prevent the potential for fraudulent actions related to their PII; and,

    d.     Continued risk to their Personally Identifiable Information as it still remains in the possession of the Defendant, who clearly has established the inability to provide the appropriate security measures needed to handle this level of data.

---

[10] *See* Identity Theft (USA.gov) https://www.usa.gov/identity-theft.

80.     A common understood impact of the negative impacts of a criminal gaining access to a person's PII is the lasting impact of identity theft on a person's credit.

81.     Cybercriminals can open lines of credit using a person's identity, and then decline to pay the bills. This action is commonplace in identity theft and oftentimes leads to the accumulation of debt that hurts an innocent person's credit scores. While this can be remedied by working with collection agencies and banks, it only leads to further costs and lost opportunity costs as more time is spent dealing with the actions of cybercriminals.[11]

82.     Per the FTC and other agencies, the number of complaints of fraud increased by 1.3% in 2023 when compared to 2022, and the total financial loses rose 16% to $10.3 billion ($8.9 billion in 2022). [12]

83.     In addition to high costs to repair their financial standings after an identity theft, Plaintiffs and Class Members will have to spend years staying vigilant with their data as sometimes cybercriminals will wait years to use their data.

84.     The Defendant neglected to report the theft of Personally Identifiable Information for months after the original theft, only worsening the situation for the Plaintiffs and the Class Members.

---

[11] *See* Identity Theft: What it is, What to Do (Equifax) https://www.equifax.com/personal/education/identity theft/articles//learn/whatitiswhattodo/#:~:text=Thieves%20could%20open%20new%20lines,incr ease%20in%20your%20credit%20utilization.
[12]*See* U.S. Fraud and Identity Theft Losses Topped $10 Billion In 2023 (Akin,2024) https://www.experian.com/blogs/askexperian/identitytheftstatistics/#:~:text=The%20number%20 of%20fraud%20complaints,from%20%248.9%20billion%20in%202022.

**Plaintiffs' and Class Members' Damages**

85.     As of this moment, the Defendant has taken few steps to remedy its failures after allowing the PII of the Plaintiffs and Class Members to be subject of the theft. The Defendant has offered 12 months of "complimentary credit monitoring" which has been previously established to be woefully short of a proper amount of time.

86.     The Defendant has required Plaintiffs and Class Members to spend the time signing up for the credit monitoring services, only furthering the damages regarding lost time and opportunity costs.

87.     In addition to the time spent setting up these accounts, the Plaintiffs and Class Members are going to lose time and opportunity costs consistently as a result of this breach. The Plaintiffs and Class Members will have to constantly review their financials for fraudulent actions, potentially alert their credit companies of potential fraud, contact their financial institutions to alert them of potential risk, continue to keep an eye on their PII for years to come focusing on unauthorized access to their accounts, and continue many other time-consuming actions centered around curing the failures of the Defendant.

88.     The Plaintiffs and Class Members have been damaged by the potential threat of identity theft, which is now a constant and increased risk stemming from the concession of their Personally Identifiable Information by the Defendant.

89.     In addition, the Plaintiffs and Class Members have a justifiable interest in protecting their PII, which is reasonably believed to still be in the possession of the Defendant. This ensures a heightened level of attention on the Defendant's ability to implement correct security measures going forward and ensure the protection of the Plaintiffs and Class Members Personally Identifiable Information extending into the future.

90.     As a whole, the Plaintiffs and Class Members have suffered, and are going to continue to suffer, injuries stemming from the failures of the Defendant. These injuries vary and all stem from the impact of the Data Breach that the Defendant failed to properly protect its systems against.

## CLASS ALLEGATIONS

91.     The Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

92.     The Nationwide Class that the Plaintiffs seek to represent is defined as the following:

    a.     All persons whose Personally Identifiable Information was
           actually or potentially accessed or acquired during the Data
           Breach event that is the subject of the Notice of Data Breach
           (hereinafter referred to as the "Class").

93.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state, or local governments, including, but not limited to, its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

94.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

95.     Numerosity - Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are reported to be roughly 2.3

million persons whose Personally Identifiable Information was improperly accessed in the Data

Breach, and each Class is apparently identifiable within Defendant's records.

96.    Commonality - Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact

common to the Classes exist and predominate over any questions affecting only individual Class

Members. These include:

    a.    Whether and to what extent Defendant had a responsibility to ensure the safe keeping of the Plaintiffs and Class Members Personally Identifiable Information;

    b.    Whether Defendant had a responsibility not to disclose the Personally Identifiable Information of the Plaintiffs and Class Members to unauthorized third parties;

    c.    Whether Defendant failed to properly protect the Personally Identifiable Information of the Plaintiffs and Class Members;

    d.    Whether and when Defendant actually learned of the Data Breach;

    e.    Whether Defendant adequately, promptly, and accurately informed the Plaintiffs and Class Members that their PII had been compromised;

    f.    Whether Defendant violated the laws by failing to notify the Plaintiffs and Class Members in a prompt fashion that their PII had been compromised;

    g.    Whether Defendant failed to employ reasonable security measures that match the nature and scope of the information compromised in the Data Breach;

    h.    Whether Defendant adequately addressed and fixed the security concerns which permitted the Data Breach to occur;

    i.    Whether the Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

    j.    Whether the Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and,

      k.     Whether the Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

97.    Typicality - Fed. R. Civ. P. 23(a)(3): The Plaintiffs' claims are representative of those of other Class Members because all Class Members had their PII conceded as a result of the Data Breach due to Defendant's misfeasance.

98.    Policies Generally Applicable to the Class: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to the Plaintiffs.

99.    Adequacy - Fed. R. Civ. P. 23(a)(4): The Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that the Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. The Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages the Plaintiffs have suffered are typical of other Class Members. The Plaintiffs also have retained counsel experienced in complex class action litigation, and Plaintiffs intends to prosecute this action vigorously.

100.    Superiority and Manageability - Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their

common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant.

101.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because:

      a.    Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources;

      b.    The costs of individual suits could unreasonably consume the amounts that would be recovered;

      c.    Proof of a common course of conduct to which the Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and,

      d.    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

102.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

103.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

104.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personally Identifiable Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

105.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    Whether Defendant owed a legal duty to the Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personally Identifiable Information;

    b.    Whether Defendant breached a legal duty to the Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personally Identifiable Information;

    c.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d.    Whether an implied contract existed between Defendant on the one hand, and the Plaintiffs and Class Members on the other, and the terms of that implied contract;

    e.    Whether Defendant breached the implied contract;

    f.    Whether Defendant adequately and accurately informed the Plaintiffs and Class Members that their Personally Identifiable Information had been compromised;

    g.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and,

h.    Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### COUNT 1
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Putative Nationwide Rule 23 Class)**

106.    All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

107.    The Plaintiffs and the Class entrusted their Personally Identifiable Information to Defendant only on the premise, and with the understanding, that Defendant would safeguard their information, use their information for business purposes only, and/or not disclose their Personally Identifiable Information to unauthorized third parties.

108.    Defendant knew, or reasonably should have known, of the sensitivity of the Personally Identifiable Information and the types of harm that the Plaintiffs and the Class could and would suffer if the Personally Identifiable Information were wrongfully disclosed.

109.    Defendant knew, or reasonably should have known, that the failure to exercise due care in the collecting, storing, and using of the Personally Identifiable Information of the Plaintiffs and the Class involved an unreasonable risk of harm to the Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

110.    By accepting, storing, and maintaining Plaintiffs' and Class Members' Personally Identifiable Information, Defendant undertook an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class, to:

a.    Exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties;

24

b.  Design, maintain, and test security protocols to ensure that the Personally Identifiable Information of the Plaintiffs and the Class Members in Defendant's possession was adequately secured and protected;

c.  Exercise appropriate clearinghouse practices to remove Personally Identifiable Information it was no longer required to retain pursuant to regulations;

d.  Implement and employ procedures to detect and prevent the improper and unauthorized access, dissemination, and misuse of the Personally Identifiable Information; and,

e.  Adequately disclose to Plaintiff and members of the Class that Personally Identifiable Information in Defendant's possession may have been compromised, how it was compromised, and the precise types of data that were compromised such that Plaintiff and members of the Class could take steps to mitigate the damage.

111.  Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, the Plaintiffs and the Class in that the Plaintiffs and the Class entrusted Defendant with their confidential Personally Identifiable Information as a necessary prerequisite of obtaining Defendant's services.

112.  A breach of security, unauthorized access, and resulting injury to the Plaintiffs and the Class was reasonably foreseeable, due to the nature of Defendant's industry, and particularly in light of Defendant's inadequate security practices. Defendant knew, or should have known, of the inherent risks in collecting and storing the Personally Identifiable Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Personally Identifiable Information, and the necessity for encrypting Personally Identifiable Information stored on Defendant's systems.

113.  The Plaintiffs and the Class had no ability to protect their Personally Identifiable Information that was, and possibly remains, in Defendant's possession.

114.    Defendant was in the best position to protect against the harm suffered by the Plaintiffs and the Class as a result of the Data Breach.

115.    Defendant, through its actions and/or omissions, unlawfully breached its duties to the Plaintiffs and the Class in all, or some, of the following particulars;

   a.    Failing to take reasonable steps and opportunities to prevent the Data Breach, as plead herein;

   b.    Failing to comply with industry standards, regulations, and practices at the time for the safekeeping of the Personally Identifiable Information of the Plaintiffs and the Class, including basic encryption techniques freely available to Defendant, as pled herein;

   c.    Failing to correct, update, or upgrade its security protections, thus causing the Data Breach, as pled herein;

   d.    Failing to heed industry warnings and alerts to provide adequate safeguards to protect the Personally Identifiable Information of the Plaintiffs and the Class in the face of increased risk of theft, as pled herein;

   e.    Failing to have appropriate procedures in place to detect and prevent dissemination of Personally Identifiable Information, as pled herein;

   f.    Failing to exercise appropriate clearinghouse practices by failing to remove Personally Identifiable Information it was no longer required to retain pursuant to regulations, as plead herein; and,

   g.    Failing to adequately and timely disclose to the Plaintiffs and the Class the existence and scope of the Data Breach, as pled herein.

116.    Section 5 of the FTC Act prohibits unfair practices inside of commerce and has been enforced in a fashion that includes the failure to properly protect persons against the theft of their PII.

117.    The Defendant violated Section 5 of the FTC Act when it failed to adopt reasonable security measures centered around protecting a person's PII and lacked the care to comply with commonplace industry standards, which constitutes negligence *per se*:

    a.    Both the Plaintiffs and the Class are members of the class of persons that the FTC Act was designed to protect;

    b.    The harm that occurred that resulted from the Data Breach was a form of harm that the FTC Act was designed to guard against; and,

    c.    The FTC has taken enforcement actions against corporations for failure to employ responsible data protection measures and failure to avoid unfair and deceptive practices, which lines up consistently with the harm experienced by the Plaintiffs and the Class.

118.    But for Defendant's wrongful and negligent breach of duties owed to the Plaintiffs and the Nationwide Class, the Personally Identifiable Information of the Plaintiffs and the Class would not have been compromised.

119.    As a direct and proximate result of Defendant's negligence and negligence *per se*, the Plaintiffs and the Class have suffered and will suffer injury, including, but not limited to, the following:

    a.    Actual identity theft;

    b.    The loss of the opportunity of how their Personally Identifiable Information is used;

    c.    The compromise, publication, and/or theft of their Personally Identifiable Information;

    d.    Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personally Identifiable Information;

    e.    Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to

mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

f.    Costs associated with placing freezes on credit reports;

g.    The continued risk to their Personally Identifiable Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personally Identifiable Information of Plaintiffs and the Class; and,

h.    Present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Personally Identifiable Information compromised as a result of the Data Breach for the remainder of the lives of the Plaintiffs and the Class.

120.    As a direct and proximate result of Defendant's negligence and negligence *per se*, the Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

121.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se,* the Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Personally Identifiable Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personally Identifiable Information in its continued possession.

122.    As a direct and proximate result of Defendant's negligence and negligence *per se*, the Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

## <u>COUNT II</u>
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiffs and the Putative Nationwide Rule 23 Class)

123.    All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

124.    As part of their attempt to gain employment, the Plaintiffs and Class Members were required to provide the Defendant with their Personally Identifiable Information, which the Defendant accepted.

125.    When the Defendant agreed to provide its service in the form of employment, and the Plaintiffs and Class Members provided their Personally Identifiable Information, this provided the groundwork for an implied contract.

126.    Through this agreed upon transaction, the Plaintiffs and Class Members mutually agreed to an implied contract with the Defendant. An implied contract of this nature includes an implied understanding and agreement that:

      a.    The Defendant would protect the Plaintiffs' and Class Member's Personally Identifiable Information from any unauthorized access or activity;

      b.    The Defendant would not store Personally Identifiable Information that it no longer reasonably needed, and would delete the information of Plaintiffs and Class Members after a reasonable amount of time; and,

      c.    The Defendant would act within the proper time frame when it came to supplying the Plaintiffs and Class Members with a notice or alert of the previously mentioned Data Breach.

127.    The Defendant undoubtedly breached its implied contract with the Plaintiffs and Class Members when they:

      a.    Decided to store the Personally Identifiable Information of the Plaintiffs and Class Members on a publicly available database that was not protected by any form of multi-factor

authentication, and which could be accessed by members of the public on the internet; and,

b.     Decided to wait an unreasonably long time to alert both the Plaintiffs and the Class Members of the previously mentioned Data Breach.

128.     It is a reasonable assumption that the Plaintiffs and the Class Members would not have shared their information with the Defendant if they had known it would not be stored behind even a basic level of security. It is also a reasonable assumption that the Defendant would not wait multiple months before informing the impacted parties of the Data Breach that involved their Personally Identifiable Information.

129.     The Defendant's breach of implied contract has led to the Plaintiffs and Class Members suffering damages from:

a.     Lost benefit of their bargain;

b.     Monetary losses and expenses;

c.     Loss of time; and,

d.     The substantial loss of value attached to their Personally Identifiable Information.

130.     The Defendant's breach of implied contract has led the Plaintiffs and Class Members to suffer, and continue to suffer, from:

a.     The continued fear of identity theft crimes, fraud, and abuse which will result in monetary loss;

b.     Actual cases of identity theft, fraud, and abuse which have resulted in monetary loss;

c.     Loss of confidentiality;

d.     The illegal sale of their data by cybercriminals who now have their Personally Identifiable Information; and,

e.      Expenses, or the loss of time, due to having to employ credit
        monitoring efforts;

f.      Loss of time resulting from the extra time spent managing
        personal finances like banking statements and credit reports;

g.      Decreased credit ratings;

h.      Lost work time and opportunity costs; and,

i.      Any other economic or non-economic harm.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiffs and the Putative Nationwide Rule 23 Class)

131.    All the preceding paragraphs of this Complaint are incorporated herein, as if set
forth more fully at length.

132.    The Plaintiffs and Class Members both provided the Defendant with their valuable
Personally Identifiable Information, and thus granted the Defendant a monetary benefit.

133.    The Defendant also decided to garner further profit by foregoing the costs normally
attached with reasonable data security systems and instead opted to leave the Plaintiffs and Class
Members Personally Identifiable Information in a vulnerable state.

134.    The Defendant opted to forego installing effective security measures and thus
choose to go with cheaper security measures. Both the Plaintiffs and Class Members suffered
directly as a result of this decision as it led to the aforementioned failure by the Defendant to
protect their PII.

135.    The Defendant should in no fashion be allowed to hold the monetary value that it
gained from the Plaintiffs and Class Members, as they gained this benefit from failing to implement
just security measures and this violated the principles of equity and good conscience.

136.    The Defendant failed to disclose its lack of security measures, and thus gained this financial benefit through inequitable means.

137.    It is well within reasonable belief that the Plaintiffs and Class Members would not have provided the Defendant with their PII if they knew about the lack of data security measures being employed by the Defendant.

138.    The Plaintiffs and Class Members have no adequate remedy at law.

139.    As a direct and proximate result of Defendant's actions, the Plaintiffs and the Class have suffered and will suffer injury, including, but not limited to, the following:

    a.    Actual identity theft;

    b.    The loss of the opportunity of how their Personally Identifiable Information is used;

    c.    The compromise, publication, and/or theft of their Personally Identifiable Information;

    d.    Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personally Identifiable Information;

    e.    Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

    f.    The continued risk to their Personally Identifiable Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personally Identifiable Information of Plaintiffs and the Class; and,

    g.    Present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Personally Identifiable

Information compromised as a result of the Data Breach for
the remainder of the lives of the Plaintiffs and the Class.

140.     The Plaintiffs and Class Members have suffered, and will continue to suffer, as a direct result of the Defendant's actions. The Defendant should be compelled to disgorge monetary funds into either a fund or trust for the benefit of the affected parties; funds that they unjustly received from them.

## COUNT IV
## DECLARATORY AND INJUCTIVE RELIEF
### (On behalf of Plaintiffs and the Putative Nationwide Rule 23 Class)

141.     All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

142.     The Plaintiffs and Class Members are opting to make this claim under the Federal Declaratory Judgement Act, 28 U.S.C. § 2201.

143.     The Defendant failed in its owed duty of care to the Plaintiffs and Class Members that requires reasonable security when it comes to the protection of their Personally Identifiable Information.

144.     The Plaintiffs and Class Members have suffered actual harm, and are at risk of additional or future harm, in the wake of the Data Breach which the Defendant caused by not filling its contractual obligations and standard duties of care when it comes to data security measures, as well as its failure to address the shortcomings that led to the breach.

145.     There is no sound reason to have faith in that the Defendant's post-breach employee training and security, which would imply that it is still failing to meet its legal duties and contractual obligations.

146.     Therefore, Plaintiffs and the Class are seeking to declare that:

a.   The current data security systems that the Defendant has in operation do not comply with its obligations and duties to provide adequate security; and,

b.   In order to remedy these contractual shortcomings and protect the PII of the Plaintiffs and Class Members going forward, the Defendant must place into practice security measures that are considered industry standards which includes, but is not limited to, the following:

i.   The employment of internal personnel whose sole role is to conduct regular tests, including audits of its systems, and to identify and correct any remaining areas of security concerns inside the Defendant's current systems;

ii.   The engagement of third-party auditors and internal personnel who continually observe automated security monitoring systems;

iii.   The auditing, testing, and training of any security personnel and employees in regard to the new and updated security measures;

iv.   The removal, in a reasonably proper and safe fashion, of any Personally Identifiable Information that is not necessary for the day-to-day operations of the Defendant;

v.   The employment of consistent scans and security checks for any possible security breaches; and,

vi.   The development of a system centered around the Defendant continually training and educating its security personnel and employees on how to handle highly sensitive, personally identifiable information which includes, but is not limited to, that of the Plaintiffs' and Class Members' PII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members, request judgment against the Defendant and that the Court grant the following:

A.      For an Order certifying the Class, and appointing Plaintiffs and their Counsel to represent the Class;

B.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs and Class Members, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

C.      For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including, but not limited to, an Order:

   i.      Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   ii.     Requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.    Requiring Defendant to delete, destroy, and purge the PII of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

   iv.     Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

   v.      Prohibiting Defendant from maintaining the PII of Plaintiffs and Class Members on a cloud-based database;

vi.    Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   Requiring Defendant to engage independent, third-party security auditors and internal personnel to run automated security monitoring;

viii.  Requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    Requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.     Requiring Defendant to conduct regular database scanning and securing checks;

xi.    Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiffs and Class Members;

xii.   Requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel

how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    Requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting PII;

xiv.    Requiring Defendant to implement, maintain, regularly review, and revise, as necessary, a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    Requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves; and

xvi.    Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers, and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to Counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

D.    For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses and as further allowed by law;

F.    For prejudgment interest on all amounts awarded; and,

G.    Such other and further relief as this Court may deem just and proper.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

Dated: August 6, 2024

By:  /s/ Sara J. Watkins, Esquire

SARA J. WATKINS, ESQUIRE
PA ID No.: 325770
D. AARON RIHN, ESQUIRE
PA ID No.: 85752
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel: 412-281-7229
Fax: 412-281-4229
swatkins@peircelaw.com
arihn@peircelaw.com

*Counsel for Plaintiffs and the Proposed Class*